UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:05CR-25-R

UNITED STATES OF AMERICA                                                                   PLAINTIFF

v.

MICHAEL A. YANDAL                                                                          DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Michael Yandal's Motion to Suppress evidence obtained as a result of a stop conducted by the Tri-County Drug Task Force and the Mayfield Police on the evening of June 23, 2005, in Graves County, Kentucky (Docket #12). The United States has responded (Docket #14). A suppression hearing was held before this Court on February 21, 2006. This matter is now ripe for adjudication. For the following reasons, the Defendant's Motion to Suppress is **DENIED**.

**BACKGROUND**

On the evening of June 23, 2005, detectives from the Tri-County Drug Task Force and Mayfield Police Department were parked at a well lit gas station at the Intersection of Highways 94 and 381 in Graves County, Kentucky. Detective Ty Jackson ("Det. Jackson") saw Defendant's car drive by him, but Det. Jackson could not see into the windows of Michael Yandal's ("Mr. Yandal") vehicle. The detectives pulled over Mr. Yandal and asked him for his license and registration. Mr. Yandal was informed that he had been stopped because the detective thought the tint on his car was too dark as he could not see that well into his vehicle. At that time, Det. Jackson smelled an odor of marijuana coming from the Mr. Yandal's car. Det. Jackson then asked Mr. Yandal to produce a certificate stating that his windows were legally tinted, but Mr. Yandal did not produce that document. After asking him to leave his vehicle, Mr.

Yandal refused. The detectives brought in a drug dog to determine the suspicion of Det. Jackson, and at that time Det. Jackson wrote Mr. Yandal a citation for an excessive window tinting in violation of KRS §189.110 (3).

During the standoff, Mr. Yandal admitted that he had possession of some drugs and began to ask police how much equaled enough for an arrest. After being informed that a taser was on its way to be used against him, Mr. Yandal passed some of the drugs through his sunroof in a backpack, which contained 63.5 grams of crack-cocaine and 8 ounces of marijuana. Mr. Yandal eventually exited his vehicle before the taser was used, and advised the detectives there was a handgun in his car in plain sight. In addition to the .40 caliber handgun, the detectives also found a magazine containing ten (10) rounds of ammunition, another bag of marijuana, and $2,150 in U.S. currency.

Mr. Yandal asserts that the stop of his vehicle was warrantless, not consensual, and without probable cause to believe that the Defendant had been involved in a criminal activity. The Defendant further questions the jurisdiction of the detectives to pull him over that evening.

## DISCUSSION

KRS §189.110 (3) states:

> [a] person shall not operate a motor vehicle required to be registered in the Commonwealth, on a public highway, road, or street on which the vehicle the side wings and side windows on either side forward of or adjacent to the operator's seat are composed of , covered by or treated with any sunscreening material or other product or covering which has the effect of making the window nontransparent...a material may be applied to the window if, when test on one-eighth (1/8) inch clear glass, the material has...a light transmittance of at least (35%) in the visible light range.

After a police officer completes an initial traffic stop, a driver of a vehicle may be further detained if the officer has a reasonable suspicion to believe that further criminal activity "may be

afoot." *US v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) *quoting United States v. Sokolow*, 490 U.S. 1, 7 (1989). Detecting the smell of marijuana coming from a vehicle would give an officer a sufficient reasonable suspicion that criminal activity was afoot. *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004).

In the instant matter, the detectives made a legal stop of Mr. Yandal's vehicle after Det. Jackson could not see into the driver's side of the Defendant's car. In his testimony and citation, Det. Jackson stated that while sitting in a well lit area with his lights set on the road, he could not see into the Mr. Yandal's vehicle. Mr. Yandal could not produce his required sticker and/or certificate that stated that his tinting was legal under Kentucky law. After his arrest, Mr. Yandal had his windows tested, and the test came back at 34%, with a plus or minus 2% variation. In Kentucky, the legal limit for tinted windows is 35%. Mr. Yandal's tint was so close to the legal limit that Det. Jackson had the legal right to detain Mr. Yandal to find out about his tinting certifications. Additionally, one of the purposes of KRS §189.110 is to prohibit tinting that does not allow the windows of a vehicle to be transparent. Det. Jackson could not see into Mr. Yandal's car. Though Mr. Yandal may have arguably had legal tinting, but the fact that Det. Jackson could not see into his car gave Det. Jackson the legal right to pull over Mr. Yandal. Accordingly, the detectives had the right to stop Mr. Yandal's vehicle.

After pulling over Mr. Yandal, Det. Jackson detected the smell of marijuana coming from Mr. Yandal's car. This gave Det. Jackson a reasonable suspicion that criminal activity was afoot. Before searching the vehicle, the detectives brought in a drug dog who confirmed their suspicions and Mr, Yandal voluntarily turned over crack-cocaine and marijuana. As such, the detectives did not need a warrant to search Mr. Yandal's vehicle.

Lastly, the detectives had the jurisdictional authority to pullover Mr. Yandal because they were a part of a joint Tri-County drug task force, which had jurisdiction in Graves County.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress is **DENIED**.

An appropriate order shall issue.